# AMENDED COMPLAINT PAGE 1

In May of 2013, I became [http://www.ohiochannel.org/video/governor-john-kasich-ohio-alliance-for-health-transformation-rally](http://www.ohiochannel.org/video/governor-john-kasich-ohio-alliance-for-health-transformation-rally) involved as an American citizen, U.S. Marine and Commander of American Legion Post 315 in the Ohio Medicaid Expansion movement. At no time did I mention University Hospitals, I was involved in this campaign with fellow veterans so that veterans and American citizen might be covered by Medicaid expansion in Ohio. I started in June 3, 2013, please see link https://www.youtube.com/watch?v=5YDN4bRpZZM. Ohio National Guard and Veteran Groups Support Expanding Medicaid Eligibility. Dan Bucci (White male), manager of Govermental Affairs, instructing me what I could say and do. Also, telling me that I could not speak with the media. Later in June Senators and Representatives of the State of Ohio granted and invitation that I would come and state my concerns to them. Again Dan Bucci is their as if I am a child. This is a man who has not served his country instructing me what I can say as an American citizen. On July 9, 2013, I was again invited to Columbus, Ohio to speak on the impact of Medicaid Expansion in Ohio for veterans. (please see link http://www.ohiochannel.org/video/governor-john-kasich-ohio-alliance-for-health-transformation-rally).
 Again, Dan Bucci, is their monitoring my acivities as an American citizen giving me instructions.
On October 18, 2013, I am invited by the Govenor of Ohio to speak at the Cleveland Clinic concerning the impact of Medicaid expansion on veterans. (Please see link http://wksu.org/news/story/37143).
Ohio Govenor Kasich pushes Medicaid expansion at the Cleveland Clinic on the eve of a critical vote.
At this event not only was Dan Bucci here but Heidi Gartland VP of Govermental Affairs again telling me what I can say.

When applying for my position at University Hosptials, I had to answer if I was a veteran or not and my branch of service. I was also the founder of the Veterans Service Group for University Hospitals, and I organized our celebration of Veterans Day for four straight years.

In my position working in the Office of the Senior Advisor to the President and CEO of University Hospitals Health System and the President and CEO of University Hospitals Case Medical Center (AKA University Hospitals of Cleveland). I was constantly used as a liaison between the organizations and African-American, Hispanic, Latino, LGBT, Veterans and the community that UHHS served from 2005 – 2014 and my transfer to Governmental Affairs..

I was an advocate on behalf of the downtrodden and those without a voice. I spoke out at the Diversity Council about University Hospitals Health System abandonment of the lower income community. I was active in the implementation of the Consent Decree that was fashioned with the Cleveland Police Department to make peace with the Cleveland community. I was the coordinator of school partnerships and brought the inner-city children within University Hospitals Health System from K-12 in a multitude of fashions. We celebrated all heritage months. I was the architect of UHHS compliance in 2014 of the Human Rights Campaign throughout the system, I engineered UHHS first participation in the 2013 and 2014 LGBT Pride Day in Cleveland, I was brought before the Board of Directors for University Hospitals Health System in 2013 to stand by my insistence that the LGBT community at UHHS have a voice in an employee resource group. (The Vice President of Diversity at the time Donnie Perkins disagreed and called himself throwing me under the bus) I was also the coordinator for all of the employee resource groups UHHS had at all locations.

University Hospitals was #2 Diversity in the entire country in 2012 and #1 in 2013 and 2014 as designated by Diversity Inc.  I received a subpar performance evaluation in March 2014 for no documented reason I complained that this was unfair to Steve Standley (White male).  There was nothing done about this injustice.

In April 2014 I was transferred to Governmental Affairs this effectively made me lose my seniority in Executive Administration and start at the bottom in seniority in governmental affairs with Heidi Gartland (white female) at her request and the approval of Heather Harmon (white woman).  I was consistently harassed, humiliated and degraded by Heidi Gartland.  She made me come to meetings every week because she could, yet no white or female employees did so weekly as I had to do.  I had to account for every minute which was a burden that was not placed on female or white employees in that department.  She made racist and bigoted statements during our meetings.  Once even letting me know that whites could do without blacks in this world in discussion about infant mortality.  She made derogatory comment about my race in why many black females are so pregnant and why do you people drink so much and why do you use drugs and kill each other.  These are all very inappropriate and offensive questions and comments.  This was treatment to induce my constructive discharge.

In April 26, 2014 my mother Juanita Tripp passed away from cancer.  I requested bereavement leave as an other white employee at UHHS would be entitled to.   This request was met by a callous, racist and indignant white female slave driver in that we can meet some of these deadlines before you bury your mother.

In April 2014 I was the coordinator for the David Satcher Clerkship, which required me to go out of town to recruit minority medical students for the program.  Heidi Gartland knew that I was a non-exempt employee and refused to pay me overtime for my travel and time worked during the Minority Medical conference which was five full days away Washington D.C.

On Wednesday, January 14, 2015, I was going to pick up poster for the Martin Luther King Jr. celebration systemwide for Dr. Margaret Larkins-Pettigrew.   These signs were at the dock in the sub-basement of University Hospitals Case Medical Center.  It was around 1:45pm when I went to pick them up.  I got to the deck and was shown where the posters where.  I attempted to pick them up but was unable to grasp them with my right hand, so I place them in my arms and tried to take them back to my desk.  It was necessary to get these posters distributed to the different hospitals in the system for the celebration that would take place for Dr. Martin Luther King on Monday, January 19, 2015.

I had a meeting scheduled with Heidi Gartland, and Heather Harmon for 3:00pm on the agenda was the issue of my carpal tunnel syndrome with my right hand that I had to have surgery on.  I was unable to open the door to get in the hallway but was lucky that someone can in, and I followed them.  I was waiting in the hall when Heidi Gartland came out and invited me in.  I was told that I was being laid off and that I had until May 1, 2015 to find a new job.  I was told I would be off the next day and to report to work on Friday, January 17, 2015 at 10:00am.  When I arrived a person from IT was there and they Heidi Gartland ordered me to sign on with my password.  I complied and was told to go to her office.  While in her office I was told about multiple spreadsheets that she wanted me to completed in the two

weeks leading to my lay off. I explained to Heidi Gartland that I was unable to type with my right hand. I was told by Heidi Gartland to type slower.

We went out of her office and to my desk where she asked the IT person how much information was on my computer and the lady replied almost three gigabytes. I had an event taking place with an Hispanic group to use Bolwell A that morning and went to check on them. I returned to my desk but was unable to type. I continuously checked on my the visitors that I had that date until they left.

On Monday, January 19, 2015 I called off sick due to my inability to use my right hand. On Tuesday, January 20, 2015 I called off sick due to my inability to use my right hand. On Wednesday, January 21, 2015 I called off sick due to my inability to use my right hand. On Thursday, January 22, 2015 I called off sick due to my inability to use my right hand. On Friday, January 23, 2015 I called off sick due to my inability to use my right hand.

Heidi Gartland had a white female employee who was pregnant, and she never harassed her during her sick days or during her FMLA or upon her return. This is open discrimination based on race, sex, disability and being a veteran. On Friday, January 23, 2015 I filed my original claim for Ohio Workers Compensation through my employer please see exhibit (A). This was never submitted by the University Hospitals Disability Department. I had to get an attorney to file another one that was inaccurate. University Hospitals Disability department refused to recognize me unless I came through an attorney.

AMENDED COMPLAINT PAGE 2

Moreover, Plaintiff makes the prima facia case that through my submission of applications from August, 2006 through August 2014 for Executive Assistant positions in Executive Administration at University Hospitals Health System for the following executives:

- Michael Szubski/Chief Financial Officer/ Executive Assistant, female, white, non-veteran, younger, less education, seniority, and experience. I was not even allowed to interview.

- Paul Tait/Chief Strategic Planning Officer/ Executive Assistant, female, white, non-veteran, younger, less education, seniority, and experience. I was not even allowed to interview.

- Eric J. Bieber, MD/Chief Medical Officer/ Executive Assistant, female, white, non-veteran, younger, less education, seniority, and experience. I was not even allowed to interview.

- Michael Anderson/Chief Medical Officer/ Executive Assistant, female, white, non-veteran, younger, less education, seniority, and experience. I was not even allowed to interview.

- William I. Annable, MD/Chief Quality Officer/ Executive Assistant, female, white, non-veteran, younger, less education, seniority, and experience. I was not even allowed to interview.

- Sherri Bishop, Esq/Chief Development Officer/ Executive Assistant, female, white, non-veteran, younger, less education, seniority, and experience. I was not even allowed to interview.

- Fred C. Rothstein, MD /President, University Hospitals Case Medical Center/ Executive Assistant, female, white, non-veteran, younger, less education, seniority, and experience. I was not even allowed to interview.

- Steven Standley/Chief Administrative Officer/ Executive Assistant, female, white, non-veteran, younger, less education, seniority, and experience. I was not even allowed to interview.

- Catherine Koppelman, RN, MSN, UH Chief Nursing Officer/ Executive Assistant, female, white, non-veteran, younger, less education, seniority, and experience. I was not even allowed to interview.

- Donnie Perkins Vice President, Diversity and Inclusion/ Executive Assistant, female, non-veteran, younger, less education, seniority, and experience. I was not even allowed to interview

"Mr. Miller and other similarly situated male Negro employees have been refused transfers into Executive Administration at University Hospitals Health System as Executive Assistants because of their race and gender. That due to my age, being, male, Negro, and a veteran, with seniority in the department was denied a transfer/promotion and for reasons unrelated to the duties required to

perform the jobs for these executives. These facts substantiate that this older, male, Negro, Veteran with seniority was any meaningful opportunities of transfer or promotion to Executive Assistant in Executive Administration. 4303(2) of USERRA to include "the terms, conditions, or privileges of employment.

Plaintiff makes prima facia case that because of his age, being male, a negro, and veteran was compensated in pay, and benefits at a lower rate than white female, and other female Executive Assistants in Executive Administration although we performed jobs that required substantially equal skill, effort and responsibility under similar working conditions from August 2005 through January 2015.

*Equal Pay Act of 1963 (Pub. L. 88-38) (EPA), as amended, as it appears in volume 29 of the United States Code, at section 206(d). The EPA, which is part of the Fair Labor Standards Act of 1938, as amended (FLSA), and which is administered and enforced by the EEOC, prohibits sex-based wage discrimination between men and women in the same establishment who perform jobs that require substantially equal skill, effort and responsibility under similar working conditions.*

SEC. 206. *[Section 6]*

(d) Prohibition of sex discrimination

> (1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

I was the administrative assistant for Edgar B. Jackson Jr. MD, Senior Advisor to the CEO and President of University Hospitals Health System and the President of University Hospitals Case

Medical Center. He was a member of Executive Administration and a Negro. **Objective evidence** refers to information based on facts that can be proved by means of search like analysis, measurement, and observation. One can examine and evaluate **objective evidence**

AMENDED COMPLAINT PAGE III

University Hospitals, Steve Standley, Heidi Gartland, and Heather Harmon hired a Black African American Female Barbara Cherry to a higher position with higher pay in my department with less seniority, less education, less experience, and she was neither a veteran nor a male let alone a black male . This was a request that I had put in for with Steve Standley. They did not post this position so I might apply for it.

University Hospitals Health System, paid all white females in Executive Administration more than me an (African American male, Veteran). As employees we performed equal work on jobs requiring equal skill, effort and responsibility. The jobs are performed under similar working conditions. At my time of employment at University Hospitals there was one African-American male, veteran. Working in Executive Administration. No other males worked in Executive Administration as assistants. No males where considered or interviewed for these positions due to an unwritten policy and male blacks where taboo.

- Specifically, the jobs require:
- The same professional degree
- Problem-solving.
- The use of professional judgment to draft, review, and implement.
- The ability to understand and comply with department, instructions and procedures.
- The same degree of diligence and persistence.
- The ability to manage time, meet deadlines, and prioritize assignments.

Plaintiff satisfied the jurisdictional prerequisites to a federal action (i) by filing timely charges of employment discrimination with the Commission and (ii) by receiving and acting upon the Commission's statutory notice of the right to sue, 42 U. S. C. §§ 2000e-5 (a) and 2000e-5 (e).

Plaintiff notes, pleadings under the Federal Rules of Civil Procedure are "notice" pleadings. They require only a short, plain statement of the claim and of the relief to which plaintiff is entitled under the law. *See* FED. R. CIV. P. 8(a)(2). However, plaintiff must allege at least some of the facts that would support a prima facie case. *See Wilson v. Reuben Donnelly Corp.,* No. 98 Civ. 1750, 1998 WL 770555, at *4 (S.D.N.Y. Nov. 2, 1998).

Whether two positions are "substantially equivalent" for Equal Pay Act purposes is a question for the jury. See Tomka, 66 F.3d at 1311 ("[I]t is for the trier of fact to decide if [there] is a significant enough difference in responsibility to make the jobs unequal."); see also Hein v. Or. Coll. of Educ., 718 F.2d 910, 913 (9th Cir.1983) (noting that whether two jobs are substantially equal is a question of fact).

The Equal Pay Act and Title VII must be construed in harmony, particularly where claims made under the two statutes arise out of the same discriminatory pay policies. See Jerald J. Director, Annotation, Construction and Application of Provisions of the Equal Pay Act of 1963 (29 U.S.C.A. § 206(d)) Prohibiting Wage Discrimination on the Basis of Sex, 7 A.L.R. Fed. 707 § 4.7 (2000) (listing cases). A key difference between them, of course, is that a Title VII disparate treatment claim requires a showing of discriminatory intent, while an Equal Pay Act claim does not. See Belfi, 191 F.3d at 135. If a plaintiff can establish that the defendant's violation of the Equal Pay Act was willful, he may recover damages for up to three years of back pay prior to filing suit, as compared to two years' back pay without a showing of willfulness. See 29 U.S.C. § 255(a).

*Age Discrimination in Employment Act of 1967 (Pub. L. 90-202) (ADEA), as amended, as it appears in volume 29 of the United States Code, beginning at section 621. The ADEA prohibits employment discrimination against persons 40 years of age or older. The Older Workers Benefit Protection Act (Pub. L. 101-433) amended several sections of the ADEA. In addition, section 115 of the Civil Rights Act of 1991 (P.L. 102-166) amended section 7(e) of the ADEA (29 U. S.C. 626(e)).*

Under Federal Rule of Civil Procedure 8(a)(2), a civil complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court in *Bell Atlantic Corp. v. Twombly* explained that to survive a motion to dismiss for failure to state a claim, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." 550 U.S. 544, 555 (2007) (internal quotation marks omitted). In *Ashcroft v. Iqbal*, the Court elaborated that the complaint must "contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "*Twombly* and *Iqbal* require . . . factual amplification [where] needed to render a claim plausible." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009).

The "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64. However, an employment discrimination complaint need not include facts establishing a prima facie case of discrimination under the *McDonnell Douglas* framework. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (explaining that the *McDonnell Douglas* framework is an evidentiary standard, not a pleading requirement). A complaint "attacked by a [motion to dismiss for failure to state a claim] does not need detailed factual allegations" of any kind. *Twombly*, 550 U.S. at 555. Rather, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id.*; *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) (rejecting the defendant's contention that *Twombly* and *Iqbal* require pleading specific evidence or extra facts beyond what is needed to make the claim plausible); *Chase Group Alliance LLC v. City of New York Dept. of Finance*, 620 F.3d 146, 150 (2d Cir. 2010) (A complaint may be dismissed for failure to state a claim "only if the plaintiff fails to provide factual allegations sufficient to raise a right to relief above the speculative level.").

Judges may not grant motions to dismiss based merely on their "disbelief of a complaint's factual allegations" and "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555 (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (internal quotation marks omitted).

As the Second Circuit has instructed, *Iqbal* and *Twombly* "have rendered even more important (and more difficult) both trial judges' adherence to the most fundamental pleading principles – namely, accepting as true all factual allegations and drawing all reasonable inferences from those facts in plaintiffs' favor – and appellate judges' subsequent de novo review of the decisions of the district courts." *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 429 n.10 (2d Cir. 2011); *see also Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("Although evaluating the plausibility of a legal claim 'requires the reviewing court to draw on its judicial experience and common sense,' the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'") (quoting *Iqbal* and *Twombly*).

To establish a prima facie case of wage discrimination under the EPA, a plaintiff must show (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. 29 U.S.C. § 206(d)(1); *see also Lavin-McEleney v. Marist College*, 239 F.3d 476, 480 (2d Cir. 2001). The "equal work standard does not require that compared jobs be identical, only that they be substantially equal." 29 C.F.R. § 1620.13; *see also Lavin-McEleney*, 239 F.3d at 480 ("A plaintiff need not demonstrate her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal' in skill, effort, and responsibility."); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995) (same). Whether two positions are "substantially equivalent" is a question of fact for the jury. *Lavin-McEleney*, 239 F.3d at 480; *Tomka*, 66 F.3d at 1311.

Supreme Court's ruling in *Swierkiewicz*. *See* 534 U.S. at 508 (holding that employment-discrimination plaintiffs do not need to plead a prima facie case of discrimination). Defendants also insist on more factual minutiae at the pleading stage than *Iqbal* and *Twombly* require. *See Twombly*, 550 U.S. at 555 (a complaint does not need "detailed factual allegations").

An employment discrimination complaint need not contain specific facts establishing a prima facie case under the McDonnell Douglas framework, but instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2). The McDonnell Douglas framework-which requires the plaintiff to show (1) membership in a protected group, (2) qualification for the job in question, (3) an adverse employment action, and (4) circumstances supporting an inference of discrimination-is an evidentiary standard, not a pleading requirement. See, e. g., 411 U. S., at 800. The Court has never indicated that the requirements for establishing a prima facie case apply to pleading. Moreover, the McDonnell Douglas framework does not apply where, for example, a plaintiff is able to produce direct evidence of discrimination. See Trans World Airlines, Inc. v. Thurston, 469 U. S. 111,121. Moreover, the precise requirements of the prima facie case can vary with the context and were "never intended to be rigid, mechanized, or ritualistic.

" Furnco Constr. Corp. v. Waters, 438

u. S. 567, 577. It may be difficult to define the precise formulation of the required prima facie case in a particular case before discovery has unearthed relevant facts and evidence. Consequently, the prima facie case should not be transposed into a rigid pleading standard for discrimination cases. Imposing Defendantt's heightened standard conflicts with Rule 8(a)'s express language, which requires simply that the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U. S. 41,47. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U. S. 69, 73. Petitioner's complaint easily satisfies Rule 8(a)'s requirements because it gives Defendant's fair notice of the basis for his claims and the grounds upon which they rest. In addition, it states claims upon which relief could be granted under Title VII and the ADEA. Thus, the complaint is sufficient to survive respondent's motion to dismiss.

4303(2) of USERRA to include "the terms, conditions, or privileges of employment.

AMENDED COMPLAINT PART IV

Retaliation Charge

Dr. Sally Namboodiri, Debbie Rogers, Diane Miller and Deborah L. Templin, University Hospitals and University Hospitals Disability Management Department, University Hospitals Short Term Disability Plan, and the Veterans Administration.

On Friday, May 22, 2015 I filed a charge of discrimination against University Hospital Health System with the Federal EEOC.

On December 23, 2015 Diane Miller, University Hospitals and University Hospitals Disability Management Services Department retaliated against me by denying my claim for short term disability (see exhibit X).   4303(2) of USERRA to include "the terms, conditions, or privileges of employment.

- This was initially a worker compensation claim please see exhibit (A)
- See exhibit (A-1) Please look on bottom of page it was faxed to the BWC on 5/5/2015
- Please see confirmation of STD claim and confirmation of release of information.  (B)
- Please see Employer Authorized Representative Form (C ) see bottom of form it was signed by **Deborah Templin** on 5/20/15
- Please see Ohio Bureau of Worker Compensation file that there are 27 medical documents that are in possession of University Hospitals Disability Management Department see exhibit (D) University Hospitals Disability Management Department has a conflict of interest with both Worker Compensation and Short Term Disability.  Both have the same leadership **Deborah Templin .**
- Dr. Sally Namboodiri submits form with documentation of the of my disability since January 16, 2015 view exhibit (E)
- Dr. William Seitz reports he performed the surgery on 10/5/2015 and I would be able to come back with no restrictions to regular duty on 10/26/15.  (see exhibit F)

On February 24, 2016 Deborah L. Templin, University Hospitals and University Hospitals Disability Management Services retaliated against me my denying my claim for short term disability on review (see exhibit Z). In retaliation for the filing of my EEOC complaint on May 22, 2015.  4303(2) of USERRA to include "the terms, conditions, or privileges of employment.

This was initially a worker compensation claim please see exhibit (A)

- Please look on bottom of page it was faxed to the BWC on 5/5/2015 (A-1)
- Please see confirmation of STD claim and proof of release of information. (B)
- Please see Employer Authorized Representative Form (C ) see bottom of form it was signed by **Deborah Templin** on 5/20/15
- Please see Ohio Bureau of Worker Compensation file that there are 27 medical documents that are in possession of University Hospitals Disability Management Department see exhibit (D) University Hospitals Disability Management Department has a conflict of interest with both Worker Compensation and Short Term Disability.  Both have the same leadership <u>**Deborah Templin.**</u>
- Dr. Sally Namboodiri states what the issue is with my disability since January 16, 2015 view exhibit (E)
- Dr. William Seitz reports that he performed the surgery on 10/5/2015 and I would be able to come back with no restrictions to regular duty on 10/26/15.  (see exhibit F)

O.R.C. 4123.90 provides that "no employer shall discharge *** any employee because the employee filed a claim *** for an injury or occupational disease which occurred in the course of an arising out of his employment with that employer." (Emphasis added.)  Thus, the statue supports the view that a retaliation claim can proceed only if a workplace injury in fact occurred.

That University Hospitals Health System, University Hospitals Disability Management Department, Veterans Administration, Deborah L. Templin and Dr. Namboodiri .

The plaintiff wishes to raise five claims:

1) violation of the federal Stored Communications Act (SCA), 18 U.S.C. § 2701 et. seq.;

2) violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (a/k/a the Wiretap Act), 18 U.S.C. § 2510 et seq;

3) Ohio common law invasion of privacy;

4) civil recovery for violation of Ohio Revised Code § 2913.04(B) (which is Ohio's equivalent of the federal Computer Fraud and Abuse Act); and

5) Ohio common law intentional infliction of emotional distress.

On Feburary 24, 2016 Deborah L. Templin states in her letter to my attorney that she has received a letter from Dr. Namboodiri that she received a letter (see exhibit Z). This message is to the Veteran Service Commission not University Hospitals. please see exhibit (W) . This information is privileged and confidential. University Hospitals should not have it nor should Dr. Namboodiri give such sensitive information out about my financial state and who I am begging for assistance.

# *AMENDED COMPLAINT SECTION V*

*Failure to Provide a Reasonable Accommodation*

On January 26, 2015 I requested a reasonable accommodation from Heidi Gartland due to my inability to type. (I was told by Heidi Gartland to type slower). 4303(2) of USERRA to include "the terms, conditions, or privileges of employment.

- I have a disability as defined by the ADA see exhibit (L) and ()
- I informed Heidi Gartland about the issue with my right hand. (please see exhibit U).
- I informed Heather Harmon about the issue with my right hand and need for surgery
- There was an accommodation available that would have been effective and would not have posed an undue hardship to the employer. Dragon Speech Recognition Software.
-  (please see link https://www.youtube.com/watch?v=ImlKOA1MhlI)
- I was not provided this accommodation by University Hospitals or University Hospitals Disability Management Department.
- I was terminated from employment of May 2, 2015.