UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK MILLER, JR., | ) | CASE NO. 1:17-cv-1433 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH SYSTEM aka UNIVERSITY HOSPITALS CLEVELAND HEALTH SYSTEM, et al., | ) ) ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion for summary judgment of the sole remaining defendant, University Hospitals Health Systems, Inc. ("University Hospitals"). (Doc. No. 25 ["MSJ"].) Pro se plaintiff Frank Miller, Jr. ("Miller") filed a response in opposition (Doc. No. 28 ["Opp'n"]), and University Hospitals filed a reply (Doc. No. 29 ["Reply"]). For the reasons set forth herein, University Hospitals' motion for summary judgment is granted and this case is dismissed.

I. BACKGROUND

Miller was employed by University Hospitals from 2005 to May 2015. (Doc. No. 25-1, Declaration of Heather Harmon ["Harmon Decl."] ¶¶ 2, 12.)[1] During that entire time, Miller held the position of administrative assistant. (*Id.* ¶ 2.) In 2014, Miller was assigned to work as an administrative assistant in the Government and Community Relations Department ("Government

---

[1] Harmon is employed by University Hospitals as Vice President, Human Resources Organizational Development & Learning and Total Rewards. (Harmon Decl. ¶ 1.)

Relations"), where he reported to Heidi Gartland ("Gartland"). (*Id.* ¶ 2; Doc. No. 25-3, Declaration of Heidi Gartland ["Gartland Decl."] ¶ 2.)[2]

During 2014, Miller's last full year of employment with University Hospitals, there were forty-six (46) individuals employed as administrative assistants, including Miller. Miller was paid a higher wage than thirty-eight (38) of the other administrative assistants. Each of the administrative assistants who was paid more than Miller had a higher performance rating and/or more seniority than Miller. (Harmon Decl. ¶ 3; *see also* Doc. No. 25-2 ("MSJ Ex. 2").[3])

As the 2015 annual budget was being prepared, Gartland was informed by her superior, Steven Standley, that Government Relations would be required to eliminate one full-time position due to budget constraints. (Gartland Decl. ¶ 3; Harmon Decl. ¶ 4.) The reduction in force was not just occurring in Government Relations; it was implemented system wide, with a total of eighty-eight (88) positions eliminated. (Harmon Decl. ¶ 4; *see also* Doc. No. 25-4 ("MSJ Ex. 4").[4])

Gartland and Harmon conferred, reviewing the operations of the department to determine which position, if eliminated, would have the least impact on efficiency. At the time, Government Relations included a director, an intern, a manager, an executive secretary, and an administrative assistant (*i.e.*, Miller). (Doc. No. 25-5 ("MSJ Ex. 5").[5]) Gartland determined that Miller's job

---

[2] Gartland is employed by University Hospitals as Vice President, Government and Community Relations. (Gartland Decl. ¶ 1.)

[3] Ex. 2 is a chart of administrative assistant salaries, created and maintained as part of the regularly conducted business activity of University Hospitals. (Harmon Decl. ¶ 3.) The chart includes each employee's hourly rate, seniority date, date of birth, sex, ethnic group, and performance rating.

[4] Ex. 4 is the Consolidated 2015 Budget Summary, created and maintained as part of the regularly conducted business activity of University Hospitals. (Harmon Decl. ¶ 4.) It shows a total reduction of 88.54 full-time positions.

[5] Ex. 5 is the Organizational Chart for the Government Relations department, created and maintained as part of the regularly conducted business activity of University Hospitals. (Gartland Decl. ¶ 5.) In addition to much the same information contained on Ex. 2, this chart also identifies the age (in years and months) of each of the department's employees. There was one employee among them (the executive secretary) who was older than Miller.

functions could be assumed by other current employees, so his position was selected for elimination. (Gartland Decl. ¶ 4; Harmon Decl. ¶ 5.)

On January 14, 2015, as a result of the decision to eliminate Miller's position, Harmon directed that a proposed Separation Agreement be hand-delivered to Miller. (Harmon Decl. ¶ 6; *see also* Doc. No. 25-12 ("MSJ Ex. 12").[6]) Gartland met with Miller to advise him of his position's elimination. (Gartland Decl. ¶ 6.) As with all other non-supervisory employees whose jobs were eliminated, Miller was offered the option of accepting a severance package or electing lay-off status under the University Hospitals' policy. (Harmon Decl. ¶ 9; *see also* Doc. No. 25-7 ("MSJ Ex. 7").[7]) Miller chose the latter, which entitled him to lay-off status until May 1, 2015. (Harmon Decl. ¶ 10; *see also* Doc. No. 25-8 ("MSJ Ex. 8").[8])

While on lay-off status, as was his right, Miller applied for thirteen (13) other positions at University Hospitals.[9] Of these, he failed to meet the minimum requirements for eight (8) positions;[10] two (2) positions were canceled and not filled;[11] and three (3) positions were filled by

---

[6] Ex. 12 is an unexecuted copy of the Separation Agreement dated January 14, 2015.

[7] Ex. 7 is a true and accurate copy of University Hospitals' policy and procedure HR-60 for reduction in workforce for non-supervisory employees. (Harmon Decl. ¶ 9.)

[8] Ex. 8 is a true and accurate copy of the Layoff/Severance Option form completed and executed by Miller on January 29, 2015, as well as a true and accurate copy of the February 13, 2015 letter from Harmon to Miller confirming his lay-off status. (Harmon Decl. ¶ 10.) The letter explains that, while on lay-off, Miller is able to apply for positions at University Hospitals, and that he can change that status and accept severance at any time, but that otherwise his severance will be processed automatically on May 1, 2015.

[9] True and accurate copies of the job postings and position requirements for each are attached as an exhibit to the motion, (*see* Doc. No. 25-10 ("MSJ Ex. 10")), as is Miller's resume (*see* Doc. No. 25-9 ("MSJ Ex. 9")).

[10] Operations Analyst & Special Projects Coordinator; Operations Coordinator–Euclid; Director, Patient Access for Community Hospitals; ACO Engagement & Education Manager; Senior Clinical Application Analyst; Sr. Change Management Specialist; Clinical Documentation Improvement Specialist; and Medical Office Coordinator. (Harmon Decl. ¶ 11.)

[11] Clinical Documentation Improvement Analyst; and Health Information Specialist. (Harmon Decl. ¶ 11.)

candidates whose qualifications and experience levels made them better suited for each position and whose salary requirements were much lower than Miller's.[12] (Harmon Decl. ¶ 11.)

On May 1, 2015, since Miller had not been hired for another position with University Hospitals, his employment ended and he received a severance payment in accordance with University Hospitals' policy. This was the last payment Miller received from University Hospitals. (*Id.* ¶ 12.) Following the elimination of Miller's position as administrative assistant at University Hospitals, Miller was not replaced and another administrative assistant was not hired. (Gartland Decl. ¶ 7.)

On July 7, 2017, Miller filed the instant action. Although his complaint is not a model of clarity, it appears to set forth claims of discrimination under the following federal statutes: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17 ("Title VII"); Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"); Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–12117 ("ADA"); and the Lilly [sic] Ledbetter Fair Pay Act of 2009 ("Equal Pay Act")[13]. (Doc. No. 1, Complaint ["Compl."] at 9.[14])

## II. STANDARD ON MOTION FOR SUMMARY JUDGMENT

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[12] Patient Access Representative I–UH Eye Institute; OR Scheduler–Surgery; and Credentialing Assistant. (Harmon Decl. ¶ 11.)

[13] The Lily Ledbetter Fair Pay Act of 2009 did not create a separate cause of action; rather it simply specified "when charges may be filed for violations of [other] Acts[,]" such as Title VII, the ADEA, or the ADA. *Dixon v. Univ. of Toledo*, 638 F. Supp. 2d 847, 851 (N.D. Ohio 2009).

[14] All page number references are to the page identification number generated by the Court's electronic docketing system.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). In most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (finding that summary judgment is appropriate whenever the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l*

5

*Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003). Under this standard, "the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment [motion]." *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004) (quotation marks and emphasis omitted) (citing *Anderson*, 477 U.S. at 247–48).

## III. DISCUSSION

Before ruling on the dispositive motion of University Hospitals, the Court must comment on the nature of Miller's "opposition" to the motion. This opposition document is styled as "Plaintiff's Response to Defendant's Proposed Finding of Fact." It consists of lengthy, verbatim quotations from defendant's motion with a few brief, inserted sections captioned "disputed" wherein Miller makes conclusory statements with broad citations such as "please see record" or "[p]lease see exhibits (A – A 14)[.]" (Opp'n at 361, 365–67.) The first several pages of Miller's "opposition"—styled as "Declaration[s] of Frank Miller, Jr. pursuant to 28 U.S.C. § 1746"—are no more than verbatim copies of the declarations of Heather Harmon and Heidi Gartland with Miller's remarks interspersed.

None of this material meets the requirements of Fed. R. Civ. P. 56. Nonetheless, despite Miller's inadequate opposition brief, the Court will separately examine each of Miller's claims in light of the arguments of University Hospitals to ascertain whether there are any material factual disputes that would preclude summary judgment. *See Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380–81 (6th Cir. 2011) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at

a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.").

### A. Claims Under Title VII and ADEA

University Hospitals construes Miller's Title VII and ADEA claims as being brought on the basis of race (African-America), sex (male), and age (fifty-seven (57) years old). (MSJ at 254.) Title VII makes it an unlawful employment practice to "fail or refuse to hire or to discharge" an individual because of that person's race or sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADEA makes it an unlawful employment practice to "fail or refuse to hire or to discharge" an individual because of that person's age. 29 U.S.C. § 623(a)(1).

Where, as here, there is no direct evidence of discrimination based on any of the protected characteristics, courts apply the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Plaintiff must first establish the elements of a prima facie case. He must show:

> 1) [H]e is a member of a protected class; 2) he was qualified for the job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of his protected class.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014).

"When a plaintiff's position is eliminated due to a reduction in force (RIF), the fourth prong is met by presenting additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Stipkala v. Am. Red Cross*, 215 F.3d 1327 (Table), 2000 WL 712378, at * 4 (6th Cir. May 23, 2000) (per curiam) (quotation marks omitted). The duty to present a prima facie case is somewhat heightened in the context of a RIF because, "[a]s long as employers do not act with discriminatory intent, they

7

may eliminate positions in the name of economic necessity or efficiency, even when those positions are held by [persons in a protected class]." *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991). Discharge of a qualified employee within a protected class is not inherently suspicious because it is the nature of a RIF that some "qualified employees are going to be discharged." *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir. 1997) (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990)).

Here, there is no evidence that Miller was replaced after his position was eliminated and, in fact, he was not replaced. (Gartland Decl. ¶ 7.) Miller's job duties were assumed by other employees, including Barbara Cherry, an African-American female who is older than Miller and was an executive secretary already working in the Government Relations department. (MSJ Ex. 5; Harmon Decl. ¶ 7.) In his opposition, Miller asserts that he "had seniority on Barbara Cherry and a special skill set[.]" (Opp'n at 372.) But, although citing to "Exhibit D – D57" as evidence of his "special skill set[,]" no such exhibits are attached to the opposition brief.

In addition, plaintiff was treated no differently than all individuals subject to the RIF, including those outside the protected classes. The RIF eliminated positions held by white employees, female employees, and employees younger than Miller. (Harmon Decl. ¶ 8; MSJ Ex. 6.)

Plaintiff has not refuted these facts, nor even denied them. Instead, as already noted, Miller simply copied verbatim the entire summary judgment argument of University Hospitals with respect to these two claims and, after the first verbatim paragraph, Miller inserts a paragraph captioned "Disputed" where he states in conclusory fashion that he was retaliated against for "complaining about unequal pay and advocating for those who had discrimination issues within

[University Hospitals]" and that he was "the only male administrative secretary" and "the only male that worked with [an] Executive." (Opp'n at 361.)

There is no record evidence that, when performing the RIF, University Hospitals "singled out [Miller] for discharge for impermissible reasons[,]" *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 265 (6th Cir. 2010), such as his race, gender, or age.

University Hospitals is entitled to summary judgment on any claim brought by Miller under Title VII or the ADEA.

B. **Claim Under ADA**

University Hospitals argues that any ADA claim fails as a matter of law. As with the Title VII and ADEA claims, the *McDonnell Douglas* framework is applied.

The ADA provides that a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To establish a prima facie case of disability discrimination, plaintiff must show that 1) he is disabled; 2) he was otherwise qualified for the position, with or without reasonable accommodation; 3) he suffered an adverse employment action; 4) University Hospitals knew or had reason to know of his disability; and 5) the position remained open or he was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011).

Although University Hospitals sets out argument and evidence to show Miller's failure to meet the first, fourth, and fifth elements of a prima facie case, as with the Title VII and ADEA claims, Miller has utterly failed to refute the argument. Instead, he once again copies verbatim the arguments of University Hospitals, including the assertion that "[t]here is no dispute that Gartland

9

and Harmon did not know of [p]laintiff's alleged disability when they made the decision to eliminate [p]laintiff's position." (MSJ at 259.) Thereafter, Miller inserts a single sentence stating: "(DISPUTED) Please see exhibits (A – A14) these are a true and accurate copy of the original document that was created and maintained." (Opp'n at 367.)

The exhibits Miller cites appear to be an application he made for short term disability due to carpal tunnel syndrome. Notably, the exhibits are dated *after* January 14, 2015, when he had been presented with a proposed separation agreement. (*See* Harmon Decl. ¶ 6; MSJ Ex. 12.) In order to claim a failure to accommodate a disability under the ADA, Miller must show that he requested the accommodation *before* the decision was made to eliminate his position and terminate his employment. *Melange v. City of Ctr. Line*, 482 F. App'x 81, 84–85 (6th Cir. 2012) (requiring an employee to have "requested a reasonable accommodation prior to his termination" in order to establish a prima facie case). Miller has failed in this regard.

University Hospitals is entitled to summary judgment on any claim brought by Miller under the ADA.

### C. Claim Under Equal Pay Act

University Hospitals argues that any claim for relief under the Equal Pay Act fails as a matter of law because these claims are time-barred by the two-year statute of limitations. (MSJ at 261.)

Miller received his last payment from University Hospitals on or about May 13, 2015. (Harmon Decl. ¶ 12; Doc. No. 25-11 ("MSJ Ex. 11") (email dated 5/11/15 indicating that payment was issuing that day with receipt anticipated by "Wednesday"—which would have been 5/13/15).) Miller filed his complaint on July 7, 2017, more than two year later. Under 29 U.S.C. § 255(a), the

claim is time-barred. *See Carey v. Foley & Lardner LLP*, 577 F. App'x 573, 576 n.1 (6th Cir. 2014).

Miller has offered no opposition with respect to this argument, and University Hospitals is correct that any claim relating to equal pay is time-barred.

Even if the equal pay claim was not time-barred, it would fail on the merits. To establish a prima facie case, Miller must show that his " 'employer pa[id] different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." ' " *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 913–14 (6th Cir. 2009) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974) (further citation omitted)).

Even if a plaintiff establishes a prima facie case, the defendant has available statutory affirmative defenses, including a seniority system, a merit system, and/or any factor other than sex. *Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). At the time Miller's job was eliminated, he was one (1) of forty-six (46) individuals with the job title of administrative assistant. (Harmon Decl. ¶ 3.) Forty-four (44) of these administrative assistants were female. (*Id.*; MSJ Ex. 2.) Miller was paid more than thirty-seven (37) female administrative assistants. (Harmon Decl. ¶ 3; MSJ Ex. 2.) The seven (7) female administrative assistants (four (4) of whom were also African-American) who were paid more than Miller either had more seniority of higher performance ratings. (Harmon Decl. ¶ 3; MSJ Ex. 2.) Miller has offered nothing in opposition to University Hospitals' well-supported evidence.

University Hospitals is entitled to summary judgment on any equal pay claim.

### D. Hostile Work Environment

University Hospitals addresses separately Miller's claim, untethered to any particular statute, that he was "consistently harassed and ethically [sic] intimidated by Heidi Gartland who used her power and position into ethnic intimidation to humble a Marine!" (Compl. at 11, ¶ 5.)

"The touchstone of any hostile work environment claim . . . is whether the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Khamati v. Sec'y of Dep't of Treasury*, 557 F. App'x 434, 443 (6th Cir. 2014) (quotation marks omitted).

Here, there is no record evidence of the kind required to establish a hostile work environment. As he did with other portions of the summary judgment motion, Miller has simply copied this section verbatim into his opposition, without offering any evidence or argument, let alone evidence that would create a genuine issue of material fact.

To the extent the complaint may set forth a claim of a hostile work environment, it has no merit, and University Hospitals is entitled to summary judgment.

### E. University Hospitals' Legitimate, Nondiscriminatory Reasons

Finally, University Hospitals argues that, even if Miller had managed to show a prima facie case under any of the statutes cited, it has met its burden to articulate a legitimate, nondiscriminatory reason for eliminating Miller's position and terminating his employment. *See Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (stating that if plaintiff satisfies the prima facie showing, "the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action[]").

Plaintiff's position was eliminated as part of a RIF required by budget constraints, and because his job duties could be assumed by other employees of the Government Relations department without disrupting operations. (Gartland Decl. ¶¶ 4, 10; Harmon Decl. ¶¶ 5, 14.) In reviewing this decision by University Hospitals, the Court must look for "error on the part of the employer that is too obvious to be unintentional." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012) (quotation marks omitted).

Miller makes one argument in opposition—that he was better qualified than Barbara Cherry, who assumed some of plaintiff's duties after his termination. (Opp'n at 372.) Specifically, Miller claims he had more seniority and possessed a "specialized skill set[.]" (*Id.*)[15] These unsupported, self-serving beliefs are insufficient to create a material factual dispute regarding alleged discrimination. *Schoonmaker*, 595 F.3d at 268–69 (finding plaintiff's "subjective views in relation to other coworkers, without more, are insufficient to establish discrimination[]").

University Hospitals has met its burden of production with respect to the defense of a legitimate nondiscriminatory reason for terminating Miller's employment.

## IV. CONCLUSION

For the reasons set forth herein, University Hospitals is entitled to summary judgment on all the claims in Miller's complaint and the same is granted.

**IT IS SO ORDERED**.

Dated: July 18, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[15] In support, Miller points to "Exhibit D – D57" (Opp'n at 372)—nonexistent exhibits.